DA 09-0030

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 265

STATE OF MONTANA,

       Plaintiff and Appellee,

v.

ROBERT ANTHONY HUNT,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC 2007-039
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Jim Wheelis, Chief Appellate Defender, Tammy A. Hinderman, Assistant
              Appellate Defender, Helena, Montana

       For Appellee:

              Hon. Steve Bullock, Montana Attorney General, John Paulson, Assistant
              Attorney General, Helena, Montana

              Eileen Joyce, Silver Bow County Attorney, Kelli Fivey, Deputy County
              Attorney, Butte, Montana

Submitted on Briefs:  July 22, 2009

Decided:  August 11, 2009

Filed:

_____
                       Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Robert Hunt appeals a sentencing order of the District Court for the Second Judicial District, Silver Bow County, requiring Hunt to pay restitution. We reverse and remand for further proceedings consistent with this Opinion.

¶2 Hunt raises one issue on appeal: Whether the District Court lawfully ordered Hunt to pay restitution.

## Factual and Procedural Background

¶3 Hunt was charged by Information with felony aggravated assault or, in the alternative, felony aggravated assault by accountability, for his participation in a fight that occurred on a Butte street on July 29, 2006. The victim of the assault, Phillip "Pete" Ross, sustained severe head injuries requiring extensive medical treatment.

¶4 Hunt entered into a plea agreement on February 28, 2008, wherein he agreed to plead guilty to felony aggravated assault by accountability, and the county attorney agreed to recommend a deferred imposition of sentence and to request a presentence investigation report (PSI) to determine the amount of restitution. The District Court accepted Hunt's change of plea and ordered the preparation of a PSI.

¶5 Ted Bury, a probation and parole officer, prepared a PSI which included sections on the victim's impact and restitution. Bury stated in the PSI that he had met with Ross and that Ross had given him copies of Ross's medical bills totaling $59,560.46. Bury attached the bills to the PSI. Because Hunt's co-defendant had been ordered to pay $14,890.11 in restitution to Ross and to the Montana Crime Victims Compensation

Program (MCVCP), Bury determined that Hunt was responsible for the remaining balance of $44,670.35.

¶6 In an updated PSI filed on October 17, 2008, Bury stated that the prosecutor requested the resubmission of a restitution amount because several medical bills had been forgiven due to Ross's inability to pay. Bury further stated that he had attached to the updated PSI a Report of Victim's Pecuniary Loss (the Report) completed by Ross on October 1, 2008. The Report listed $3,989.76 in various medical bills for which Ross sought restitution; however, no documentation of these bills or evidence of Ross's payment of them was included. In addition, the following statement appeared at the bottom of the Report above Ross's signature: "I (we) verify that the information on this document is true and correct to the best of my (our) knowledge." The Report also included a notarial seal and a certificate stating that Ross personally appeared before the notary. The Report did not indicate whether Ross signed the statement under oath.

¶7 The updated PSI also set out the medical expenses paid by the MCVCP on behalf of Ross in the amount of $24,999.07. Again, however, the updated PSI did not include any affidavit from anyone at MCVCP regarding medical payments paid on Ross's behalf, nor was any documentation of such payments provided. Nevertheless, Bury determined that Hunt should pay $14,098.72, representing the difference between the $14,890.11 Hunt's co-defendant was ordered to pay and the total amount of medical expenses purportedly paid of $28,988.83.

¶8 At the sentencing hearing on November 20, 2008, Hunt's attorney questioned whether Ross was duly sworn prior to executing the Report. Counsel also questioned

3

whether there was an affidavit with respect to the amount due the MCVCP. Upon learning that the answer to both questions was essentially "no," counsel pointed out that an affidavit is required with respect to restitution and that the document signed by Ross does not qualify as an affidavit because it was not done under oath. Nevertheless, the court accepted Ross's report of loss as "a true and accurate document" and ordered that Hunt's sentence be deferred for five years to give Hunt sufficient time to pay the $14,098.72 in restitution. The court did not address the lack of any documentation from MCVCP.

¶9 On November 26, 2008, the District Court entered its Order Deferring Imposition of Sentence. In its order, the court expressly found that the report of pecuniary loss, signed by Ross and notarized, was sufficient to serve as an affidavit of loss as required by statute. On that basis, the court ordered Hunt to pay $12,500 in restitution to the MCVCP and $1,598.72 in restitution to Ross.

¶10 Hunt appeals the condition of his sentence regarding restitution.

**Standard of Review**

¶11 We clarified our standard of review for criminal sentences in *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017. In that case, we held that if the offender is eligible for sentence review, i.e., if the offender is sentenced to one year or more of actual incarceration—we will review such a sentence for legality only. *Herd*, ¶ 22. If, however, the offender is statutorily ineligible for sentence review, then we will utilize the two-tiered approach which we employed prior to the creation of the Sentence Review

4

Division (SRD), i.e., we will review such sentences for both legality and abuse of discretion. *Herd*, ¶ 22.

¶12 In the instant case, Hunt is not eligible for sentence review before the SRD because he was sentenced to a deferred imposition of sentence rather than actual incarceration. *See State ex rel. Holt v. District Court*, 2000 MT 142, ¶ 6, 300 Mont. 35, 3 P.3d 608 (citing § 46-18-903, MCA). Thus, we employ the two-tiered standard of review in this case.

**Discussion**

¶13 *Whether the District Court lawfully ordered Hunt to pay restitution.*

¶14 Hunt contends on appeal that a district court lacks the authority to impose a restitution condition unless the court follows the procedural mandates in the restitution statutes, including the requirement that the victim's pecuniary loss be substantiated in an affidavit or through live testimony. Consequently, Hunt argues that because the State failed to provide a sworn statement under oath from either the victim of the assault or the MCVCP, and because the victim did not testify as to his pecuniary loss, the court was without authority to impose a restitution condition in this case. Thus, Hunt argues that the restitution condition in his sentence should be stricken.

¶15 In its brief on appeal, the State concedes that the MCVCP should have submitted an affidavit specifying its expenditures and that the failure of the PSI to include an affidavit from the MCVCP requires a remand to the District Court for further restitution proceedings in compliance with the statute. The sole issue in this case then is whether a Report of Victim's Pecuniary Loss containing a specified list of medical expenses

verified as true by a victim before a notary public, is sufficient in form and substance to serve as the victim-submitted affidavit required by statute. We hold that it is not.

¶16 The Legislature requires that sentencing courts impose the full payment of restitution when the victim has sustained a pecuniary loss. Section 46-18-201(5), MCA. In furtherance of that statutory mandate, the Legislature also directs sentencing courts to comply with various procedures and qualifications in imposing a sentence that includes restitution. Specifically, § 46-18-242, MCA, provides:

> **Investigation and report of victim's loss.** (1) Whenever the court believes that a victim may have sustained a pecuniary loss or whenever the prosecuting attorney requests, the court shall order the probation officer, restitution officer, or other designated person to include in the presentence investigation and report:
> (a) a list of the offender's assets; and
> (b) *an affidavit* that specifically describes the victim's pecuniary loss and the replacement value in dollars of the loss, submitted by the victim.
> (2) When a presentence report is not authorized or requested, the court shall accept evidence of the victim's loss at the time of sentencing. [Emphasis added.]

¶17 In the case *sub judice*, it is undisputed that the sentencing court failed to require that the pecuniary loss set forth in the PSI be supported by an *affidavit* of the victim. Section 46-18-242(1)(b), MCA. An affidavit has a clearly defined meaning in the law. An affidavit is defined as "a written declaration *under oath*, made without notice to the adverse party." Section 26-1-1001, MCA (emphasis added). *See also Black's Law Dictionary* 62 (Bryan A. Garner ed., 8th ed., West 2004) (defining an affidavit as "[a] voluntary declaration of facts written down and *sworn to* by the declarant before an officer authorized to administer oaths, such as a notary public." (emphasis added)). Moreover, § 1-6-102, MCA, sets out the form an ordinary oath must take:

6

An oath or affirmation in an action or proceeding may be administered by the person who *swears or affirms* expressing that person's assent when addressed with "You do solemnly swear (or affirm, as the case may be) that the evidence you will give in this issue (or matter), pending between .... and ...., is the truth, the whole truth, and nothing but the truth, so help you God." [Emphasis added.]

¶18    As Hunt points out in his brief on appeal, the Report submitted in this case does not state that Ross was duly sworn, nor does it use the phrase "I do solemnly swear or affirm." In addition, the notary's certificate does not indicate whether she placed Ross under oath at any time as the certificate does not include any language to the effect that the statement was "signed and sworn to (or affirmed) before me." *See* § 1-5-610(3), MCA. Furthermore, the notary's certificate does not even confirm that Ross signed the document in the notary's presence. The certificate only indicates that the notary confirmed that Ross was who he said he was and that he appeared personally before the notary.

¶19    In this case, the Report is being used at the sentencing hearing to prove the truth of the matter asserted, i.e., that the medical expenses paid by Ross totaled $3,989.76. However, restitution must be "substantiated by evidence in the record . . . ." *See* § 46-18-243(1)(a), MCA.

¶20    This Court has determined that an affidavit must be sworn to on the basis of personal knowledge. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 26, 329 Mont. 295, 124 P.3d 168 (citing *Mountain States Resources, Inc. v. Ehlert*, 195 Mont. 496, 503, 636 P.2d 868, 872; § 26-1-1001, MCA). Failure to do so renders the affidavit invalid. *See McDermott*, ¶ 27.

7

¶21 The defendant in *McDermott* served the plaintiff with a memorandum that listed the costs the defendant incurred in defending the action. The memorandum was accompanied by an affidavit verifying the accuracy of the enumerated costs. However, the affidavit was signed by someone other than the individual who had purportedly sworn to the accuracy of the costs listed in the memorandum. We pointed out in *McDermott* the functional defects inherent in a formally flawed affidavit:

> [t]he Legislature imposed the requirement that bills of costs be verified upon oath to ensure that these documents reliably reflect actual costs incurred. The person who swears to the accuracy of the enumerated costs may be held accountable if it is later shown that they have knowingly overstated their costs. . . . [N]o documentation exists that the person who actually "made" the statement was under oath when he attested to its truth by signing it. Nobody could be prosecuted for false swearing, the consequences of which render sworn statements reliable.

*McDermott*, ¶ 27 (citing § 45-7-202, MCA (indicating that such conduct constitutes false swearing punishable by fine and/or imprisonment)).

¶22 Accordingly, we hold that the Report containing a specified list of Ross's medical expenses was not sufficient in form and substance to serve as the victim-submitted affidavit required by § 46-18-242(1)(b), MCA.

¶23 As a final matter, Hunt maintains that the restitution condition should be stricken from his sentence, either by this Court or on remand to the District Court. However, the proper remedy is to reverse the portion of the judgment ordering restitution and remand the case to the District Court for reconsideration of the restitution order after the affidavit requirements of § 46-18-242, MCA, have been satisfied. *See State v. Ariegwe*, 2007 MT 204, ¶ 182, 338 Mont. 442, 167 P.3d 815 (case remanded to the district court for

8

restitution hearing pursuant to correct and complete application of §§ 46-18-241 through -249, MCA); *State v. Smietanka*, 2008 MT 357, ¶¶ 9-10, 15, 346 Mont. 353, 195 P.3d 797 (case remanded for resentencing because MCVCP failed to submit an affidavit of pecuniary loss).

¶24 Accordingly, we remand this case for another restitution hearing at which the probation officer should submit an amended PSI containing the affidavits required by § 46-18-242(1)(b), MCA.

¶25 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE