FILED

04/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0289

DA 19-0289

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 88N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES MICHAEL WEBB, JR.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 18-350
Honorable John W. Parker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brian C. Smith, Smith Law, PLLC, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  March 10, 2021

Decided:  April 13, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Defendant James Michael Webb, Jr., appeals from his conviction of three counts of arson in the Eighth Judicial District Court, Cascade County.

¶3     On May 27, 2018, police officers and fire responders responded to Hale Carrier's residence in Great Falls, Montana, where a fifth-wheel trailer situated on Carrier's property was in flames, and neighbors were cautiously monitoring the scene. Prior to the fire, Webb and Carrier had verbally disputed about ownership of the trailer. A surveillance camera captured this interaction, following which Webb lit a cigarette with a lighter. Webb subsequently entered the trailer, retrieved clothing, and departed on foot shortly before the trailer began smoking and then erupted into flames. The Great Falls Police Department arrested Webb the next day after receiving a report that Webb was harassing a woman.

¶4     The Cascade County Attorney filed an Information alleging three counts of arson, including Count I in violation of § 45-6-103(1)(a), MCA, and Counts II and III in violation of § 45-6-103(1)(c), MCA. Count II alleged that Webb knowingly or purposely placed first responders in "danger of death or bodily injury," while Count III alleged the same as applied to the bystanders, citing damaged power lines above the trailer.

2

¶5 Following an omnibus hearing, the District Court issued an order stating that "[p]ursuant to Mont. Code Ann. § 46-13-108" the State "will not seek treatment of the Defendant as a persistent felony offender." Webb disclosed that he intended to call Brian Osborn as a witness and introduced a "letter written by Brian Osborn, dated 'Thursday 12, 18.'" The State moved in limine to exclude the letter "purporting to have been written by Brian Osborn . . . alleg[ing] that the arson victim, Hale Carrier, came to him and bragged how he burnt the camper down," as inadmissible hearsay.

¶6 Trial was scheduled for November 13-15, 2018. On November 5, the State filed a notice of its intention to treat Webb as a Persistent Felony Offender (PFO). That notice did not list Webb's previous criminal history, but on the first day of trial, the State filed a complete notice setting forth his prior eight felony convictions, with the explanation that Webb had been out of custody for less than five years. Meanwhile, Webb notified the District Court he rejected the State's plea offer.

¶7 On cross-examination during the first day of trial, Webb asked Carrier if he knew Brian Osborn, and Carrier denied knowing him. Webb asked Carrier about a person with the nickname of Ozzy, and Webb stated he knew a Calvin Osborn who went by that nickname, but that Calvin did not use the name of Brian. Webb did not ask Carrier if he had stated to anyone that he had burned the trailer, and thus Carrier neither admitted nor denied making such a statement.

¶8 On the second day of trial, the District Court held an evidentiary hearing regarding Osborn, ruling that the defense must provide an offer of proof to satisfy the test set forth in *State v. Wing*, 2012 MT 176, ¶ 15, 366 Mont. 37, 285 P.3d 469, regarding a statement by

3

Carrier against interest, or provide a foundation for admission of the statement as a prior inconsistent statement. Holding that Carrier was not unavailable, as required under *Wing*, ¶ 15, and that no statement had been made by Carrier at trial on the issue, the District Court denied admission of Osborn's testimony about the statement he attributed to Carrier, without prejudice to revisiting the issue "if the record ripens to a point we need to reconsider it." Webb's counsel stated, "I think that's fair, Your Honor," but did not re-raise the issue. The District Court had ordered the Cascade County Detention Center to transport Osborn to the District Court to be available to testify, but he was not called.

¶9 On the final day of trial, the District Court denied Webb's motion to dismiss for insufficient evidence,[1] and the defense rested its case after calling a single witness, Webb himself. The jury found Webb guilty on all three counts of arson.

¶10 Prior to sentencing, Webb objected to the PFO designation, arguing that the State's notice was not filed in compliance with statutory requirements. The District Court conducted a sentencing hearing on March 22, 2019. The court ruled the State's PFO notice was adequate and sentenced Webb to twenty years with ten years suspended, each to run consecutively, for three counts of arson. Webb appeals.

¶11 *1. Whether Webb's trial counsel provided ineffective assistance of counsel for failing to challenge Webb's convictions under § 46-11-410, MCA, the multiple convictions statute?*

¶12 "A claim of ineffective assistance of counsel constitutes a mixed question of law and fact that we review de novo." *State v. Brandt*, 2020 MT 79, ¶ 10, 399 Mont. 415, 460

---

[1] Webb does not appeal the District Court's denial of this motion.

P.3d 427 (citing *State v. Hooper,* 2016 MT 237, ¶ 5, 385 Mont. 14, 386 P.3d 548). We conduct review under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984). *Garding v. State,* 2020 MT 163, ¶ 15, 400 Mont. 296, 466 P.3d 501 (citing *Whitlow v. State,* 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861). "The defendant must show first that counsel's performance was deficient and second that counsel's deficient performance prejudiced the defendant. *Brandt,* ¶ 29 (citing *State v. Ellison,* 2018 MT 252, ¶¶ 24-25, 393 Mont. 90, 428 P.3d 826).

*Multiple Convictions*

¶13 Webb argues he should have been convicted of only one count of arson, and that his counsel was ineffective by failing to object to Webb's multiple convictions pursuant to § 46-11-410, MCA, because the three charges all contemplated a singular act and purpose. He asks for reversal of his convictions of Counts II and III, and remand for resentencing. The State concedes in part, agreeing that Webb's counsel should have objected to Webb's conviction under Count III, citing the Court's holding under similar circumstances in *Ellison,* but not both counts, because the discrete sub-sections of the arson statute under which Webb was charged require proof of different elements for conviction.

¶14 Section 46-11-410, MCA permits the prosecution of multiple offenses originating from the "same transaction," but prohibits conviction of, *inter alia,* "more than one offense if [] one offense is included in the other." "Same transaction" means conduct consisting of a series of acts or omissions motivated by either "a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; [] or a common purpose or plan that results in the repeated commission of the same offense or

effect upon the same person or the property of the same person." Section 46-1-202(23), MCA. The "same transaction" inquiry looks into the "facts underlying the charged offenses, including the defendant's motivation by a common purpose or plan." *Brandt*, ¶ 14 (citing *Ellison*, ¶ 21). An "included offense," among other statutory definitions, is one "established by proof of the same or less than all the [statutory elements of the offense] required to establish the commission of the offense charged." *Brandt*, ¶ 19 (citing § 46-1-202(9)(a), MCA; *State v. Parks*, 2013 MT 280, ¶ 29, 372 Mont. 88, 310 P.3d 1088).

¶15 Webb was convicted of Count I under § 45-6-103(1)(a), MCA, for, by means of fire, "knowing or purposely [] damag[ing] or destroy[ing] a structure, vehicle, [or] personal property. . . . of another without consent." Count II and III were charged under § 45-6-103(1)(c), MCA, for Webb's alleged actions of, by means of fire, "knowingly or purposely [] plac[ing] another person in danger of death or bodily injury, including a firefighter responding to or at the scene of a fire or explosion." Thus, while all of the charges arose from the same transaction, Counts II and III involved different elements than, and were not included within, Count I, i.e., Count I alleged the damage to property by fire, while Counts II and III alleged placing persons in danger by means of a fire. However, Counts II and III involved the same elements and were included in the other, making conviction of both charges a violation of § 46-11-410, MCA. *Ellison*, ¶ 23. Webb's counsel should have moved for dismissal of one of these counts, and this "failure constituted deficient representation" that prejudiced Webb. *Ellison*, ¶ 26. Therefore, we reverse Count III, while affirming the other two convictions, and remand for entry of an

6

amended judgment or such further proceedings consistent herewith that the District Court may deem appropriate in its discretion. *Ellison*, ¶ 29.

*Ineffective Assistance of Counsel – Opening Statement, Witness Testimony*

¶16 Next, Webb argues his counsel was "ineffective for stating in opening statements that the jury would not be able to rely on the Defense's story," which encouraged the jury to, according to Webb, "essentially ignore the testimony of [Webb], the only defense witness." Webb draws these conclusions from the language used by his attorney, who stated: "[i]t's been my experience in my legal career that there are three sides to every story. The State will present you one. The Defense will present you one. The truth is something you're going to have to decide somewhere in between." The State responds that Webb has failed to demonstrate the statement was ineffective and prejudicial, as it was a general comment on the nature of the duty to determine the truth in a trial.

¶17 Webb also argues his counsel was ineffective for failing to introduce Brian Osborn's testimony under M. R. Evid. 804(b)(3), as a statement against interest, by not making an offer of proof under *Wing*, as the District Court instructed, or by failing to lay a foundation for introduction of the evidence as a prior inconsistent statement during questioning of Carrier.

¶18 "If the record does not supply the reason for counsel's act or omission, the claim must be raised by petition for post-conviction relief," *State v. Harris*, 2001 MT 231, ¶ 21, 306 Mont. 525, 36 P.3d 372 (citing *State v. St. John*, 2001 MT 1, ¶ 40, 304 Mont. 47, 15 P.3d 970), and if the record does not "fully explain why counsel took the particular course of action . . . then the matter is best-suited for post-conviction proceedings which permit a

7

further inquiry into whether the particular representation was ineffective," *Harris*, ¶ 21 (citing *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340).

¶19 The record reflects counsel's later explanation that he stopped questioning Carrier regarding his statements once Carrier repeatedly denied knowing Osborn, and that counsel "lost [his] train of thought" in answer to the District Court's question, "what is your offer of proof, in particular, regarding witness unavailability and corroborating evidence?" However, it is not apparent from the record why counsel did not further pursue introduction of the statement later in the proceeding pursuant to the District Court's guidelines, or what counsel's thinking was on the handling and use of the evidence.

¶20 Given the potential ineffective assistance of counsel issues regarding both the opening statement and the introduction of Osborn's testimony, we conclude they are more appropriately reserved for postconviction proceedings, wherein a record concerning counsel's actions can be made. We also conclude that appointment of counsel for Webb during any such proceeding would be in the interests of justice.

¶21 *2. Whether Webb was prejudiced by the untimely PFO notice?*

¶22 Webb argues the State's untimely PFO notice was unsupported by good cause under § 46-13-108(1), MCA, warranting either re-sentencing without the PFO designation or providing Webb with the opportunity to accept the original plea agreement rejected before trial. The day prior to trial, Webb objected to the State's PFO notice, arguing "[t]he State made no attempt in its filing to demonstrate good cause for having delayed nearly three months in filing this notice." The State argues this Court has held that the purpose of a PFO notice is to "give the defendant an opportunity to file an objection to the criminal

8

record relied upon in the notice," *State v. Ramsey*, 2007 MT 31, ¶ 20, 336 Mont. 44, 152 P.3d 710 (citing *State v. Shults*, 2006 MT 100, ¶ 22, 332 Mont. 130, 136 P.3d 507), and that, here, Webb did not contest the record of convictions set forth in the notice.

¶23 We agree with Webb that the State failed to demonstrate good cause for its late filing of the PFO notice, but it is clear that he was not prejudiced by the timing. Sentencing was conducted about four months after the State gave its notice, and, as the District Court noted, the presentence investigation report listed Webb's prior offenses as well. Webb did not dispute the State's recounting of his conviction record, but only contested the timing of the notice at sentencing. We conclude Webb was not prejudiced by the State's actions. *Ramsey*, ¶ 20 (citing *Shults*, ¶ 22).

¶24 Despite the PFO designation, the District Court lawfully sentenced Webb. Criminal sentences are reviewed for legality, *State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, 133 P.3d 206 (citing *State v. Ruiz*, 2005 MT 117, ¶ 8, 327 Mont. 109, 12 P.3d 1001), and they must be based upon statutory authority, *State v. Day*, 2018 MT 51, ¶ 9, 390 Mont. 388, 414 P.3d 267 (citing *Hicks*, ¶ 41). Under § 46-18-201(3)(a), sentencing judges are empowered to impose a sentence including, *inter alia*, "a term of incarceration, as provided in Title 45 for the offense." Montana's Arson statute sets forth penalties "for a term not to exceed 20 years." Section 45-6-103(2), MCA. Further, § 46-18-201(2) permits sentencing judges to suspend sentences ranging from six months to the maximum sentence, whichever is greater. "Separate sentences for two or more offenses must run consecutively unless the court otherwise orders." Section 46-18-401(4), MCA. Here, for each count, the District Court sentenced Webb to twenty years of incarceration, ten years suspended, and each

9

count to run consecutively. Even without the PFO designation, the District Court lawfully sentenced Webb in conformance with § 46-18-201, MCA and § 45-6-103(2), MCA.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26 Webb's conviction of the third count of arson is reversed. His convictions of the other two counts of arson are affirmed. We remand for entry of an amended judgment or further proceedings consistent with our holding herein. Webb's ineffective assistance of counsel claims regarding trial counsel's opening statement and failure to introduce evidence are affirmed without prejudice to Webb's pursuit of the claims in postconviction proceedings, with the appointment of counsel.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

10