FILED

05/12/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0576

DA 23-0576

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 103N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

TYLER THOMAS SNYDER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC-22-047
Honorable John Parker, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy A. Hinderman, Appellate Defender Division Administrator,
Jeavon C. Lang, Managing Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

Joshua A. Racki, Cascade County Attorney, Stephanie Fuller, Deputy
Count Attorney, Great Falls, Montana

Submitted on Briefs: April 15, 2026

Decided: May 12, 2026

Filed:

_____
Clerk

Justice Katherine M. Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Tyler Thomas Snyder appeals his August 2023 judgment and sentence in the Montana Eighth Judicial District Court, Cascade County. First, Snyder contends that the court committed reversible plain error in accepting his May 2023 guilty pleas on the offenses of DUI and felony criminal possession of dangerous drugs without a sufficient factual basis to do so. Next, Snyder contends that the court illegally sentenced him under § 61-8-1007(1)(a)(ii), MCA, because his 2009 DUI conviction was not a previous conviction for sentencing purposes under § 61-8-1011(1)(b), MCA.

¶3 We hold that Snyder has not shown reversible error in the District Court's acceptance of his guilty pleas. Even assuming Snyder's unpreserved factual-basis challenge is reviewable under the plain error doctrine despite his failure to move to withdraw his pleas, Snyder's admissions, considered as a whole, supplied a factual basis under § 46-12-212(1), MCA. We further hold that, because Snyder's 2009 DUI was more than ten years old at the time of his 2022 offense, the District Court was not authorized to sentence him under § 61-8-1007(1)(a)(ii), MCA. Accordingly, we affirm Snyder's sentence on criminal possession of dangerous drugs, vacate the DUI sentence, and remand

for entry of an amended judgment and lawful DUI sentence in accordance with this Opinion.

¶4 In January 2022, the State charged Snyder by information with one count felony criminal possession of dangerous drugs, § 45-9-102, MCA; one count misdemeanor criminal possession of drug paraphernalia, § 45-10-103, MCA; one count misdemeanor driving without vehicle insurance, § 61-6-301, MCA; and one count DUI (second offense), § 61-8-1002(1)(a), MCA. As pertinent, the underlying probable cause affidavit alleged that, on January 22, 2022, a Montana Highway Patrol trooper stopped to assist Snyder, who was standing next to his vehicle which was broken down alongside Highway 89. The officer observed that Snyder's pupils were restricted, the whites of his eyes were yellow, and, in plain view, three loaded syringes sat on the dashboard containing a yellowish liquid. Snyder allegedly told the trooper the syringes were filled with antifreeze, but he did not know where they came from, and that he was on his way to drug treatment in Billings.

¶5 Upon learning that Snyder was on probation, the trooper obtained permission from Probation and Parole to conduct a probationary search of Snyder's vehicle, where he discovered loaded syringes, spoons with burn marks, and used cotton. A field test of the substance in the syringes indicated it was methamphetamine. The trooper also performed a field sobriety test. He did not observe signs of alcohol intoxication but did observe that Snyder's pupils changed from constricted to dilated and that Snyder was fidgety, scratched himself, and occasionally nodded off. The information alleged that Snyder had one previous DUI conviction from December 2009.

3

¶6 In April 2023, the State amended the charges to one count felony criminal possession of dangerous drugs (Count I) and one count misdemeanor DUI (second offense) (Count II). The amended information further alleged that one of the syringes seized from Snyder's vehicle was sent to the State Crime Lab where it tested positive for methamphetamine.

¶7 In May 2023, Snyder executed an acknowledgement of rights and plea agreement where, as pertinent, Snyder acknowledged that his guilty pleas constituted a waiver of "any factual dispute" that he "committed the acts that constitute[d] the elements of the [charged] offense[s]." Snyder agreed to plead guilty to both offenses in exchange for the State's sentencing recommendation and promise not to seek sentencing as a persistent felony offender.

¶8 On May 15, 2023, Snyder appeared with counsel at his change of plea hearing. Counsel guided Snyder through his allocution. First, Snyder affirmed he understood his rights and the effects of his guilty pleas; confirmed he was pleading guilty voluntarily; and denied having any complaints about his counsel. Then, Snyder answered counsel's questions regarding the factual bases for the charged offenses. As pertinent, Snyder confirmed that: (1) before contact with the state trooper, he had been driving his vehicle on Highway 89; (2) he had used methamphetamine within the 48 hours prior to the stop, as confirmed by a State Crime Lab drug test; (3) he was on the road that day traveling to treatment in Billings to address his drug use; (4) the trooper observed "several indicators" that Snyder possibly was under the influence and administered a field sobriety test;

4

(5) though Snyder disagreed with the trooper's assessment, the trooper "scored clues" that indicated Snyder may have been under the influence of drugs; (6) the trooper discovered syringes in Snyder's car; (7) Snyder's purpose for possessing most of those syringes was to use methamphetamine either before that day or at a later date; and (8) though Snyder asserted that the yellowish fluid in certain syringes was not methamphetamine and acknowledged the Crime Lab did not determine that the yellowish fluid was methamphetamine, one of the syringes contained a small amount of red residue that tested positive for methamphetamine, as stated in the lab's report.

¶9 Snyder then pleaded guilty to felony possession of dangerous drugs and second-offense DUI, and the court accepted his pleas and adjudicated him guilty of both offenses. The court ordered a presentence investigation, which later indicated that Snyder had one prior DUI conviction from December 9, 2009. In August 2023, the court sentenced Snyder on the possession offense to a four-year commitment to the Department of Corrections, all suspended, and on the DUI offense to a one-year jail term with all but seven days suspended and the mandatory minimum $1,200 fine. The court further credited Snyder with 165 days' time served, which the court said satisfied his $1,200 fine in full, and ordered the sentences on each count to run concurrently. Snyder appeals.

**Snyder's guilty pleas were knowing, intelligent, and voluntary and there was no plain error.**

¶10 Snyder contends that, at his change of plea, he denied "many" "key elements" of the charged offenses, namely that he was under the influence or in possession of drugs at the time of his encounter with the Highway Patrol trooper. He says that, given these

denials, the District Court erroneously accepted his guilty pleas without an adequate factual basis, an aspect of the voluntariness inquiry. Further, given Snyder's denials, the court was required to treat his pleas as *Alford*[1] pleas and thus required to find "strong evidence of guilt" in order to accept them.

¶11 Because he did not object or later seek to withdraw his guilty pleas, Snyder asks this Court to review the voluntariness of his guilty pleas, particularly the sufficiency of their factual bases, under the plain error doctrine. Generally, this Court does not address issues raised for the first time on appeal. We may, however, exercise review of an unpreserved claim when the defendant shows that a plain error affected a fundamental right and failure to review and correct the error would create a manifest miscarriage of justice and undermine the fundamental fairness of proceedings. *State v. Bristow*, 2023 MT 188, ¶ 12, 413 Mont. 403, 537 P.3d 103.

¶12 Section 46-12-204, MCA, allows a defendant to plead guilty to a charged offense. Guilty pleas must be knowing, intelligent, and voluntary. Section 46-12-204(2), MCA; *State v. Locke*, 2008 MT 423, ¶ 15, 347 Mont. 387, 198 P.3d 316; *State v. Schaff*, 1998 MT 104, ¶ 14, 288 Mont. 421, 958 P.2d 682. A plea is voluntary where the defendant is mentally competent and fully aware of his rights and the direct consequences of the plea. *State v. Usery*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d 279. A defendant's claim of innocence does not affect the voluntariness of a plea because a defendant who believes he

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970); § 46-12-212(2), MCA.

is innocent may still make a voluntary and intelligent choice between two alternative courses of action. *State v. Frazier*, 2007 MT 40, ¶¶ 10-11, 336 Mont. 81, 153 P.3d 18.

¶13 In addition to ascertaining that a plea is voluntary under § 46-12-204(2), MCA, courts must also determine that there is a factual basis for the plea for any offense resulting in incarceration. Section 46-12-212(1), MCA; *Schaff*, ¶¶ 20-22 (component of an "adequate" judicial inquiry on guilty plea is ascertaining facts upon which guilt is based). "A court need not extract an admission from the defendant of every element of the crime in order to establish a factual basis for the guilty plea," but "the court must ascertain, from admissions made by the defendant at the plea colloquy, that the acts of the defendant, in a general sense, satisfy the requirements of the crime to which he is pleading guilty." *Frazier*, ¶ 20; *Schaff*, ¶ 22; *State v. Ernst*, 2025 MT 89, ¶ 22, 421 Mont. 441, 567 P.3d 944. The factual-basis inquiry is not a trial on the evidence; it asks whether the defendant's own admissions, viewed in context, generally satisfy the charged offense.

¶14 Here, Snyder overstates the effect of his plea colloquy. Though he contends that he maintained his innocence by denying key elements of the charged offenses, the record does not bear that out. Section 45-9-102(1), MCA, provides that a person commits the offense of criminal possession of dangerous drugs if he "possesses any dangerous drug," including any quantity of methamphetamine. *See* §§ 50-32-101(6), -224(3)(d), MCA. Snyder admitted that he possessed the syringes discovered in his vehicle during the stop for the purpose of using methamphetamine either before or after that day and that one of the syringes retrieved from his vehicle during the stop contained a red residue that tested

positive for methamphetamine at the State Crime Lab. Snyder only denied that the yellowish fluid in certain syringes was methamphetamine; he did not deny that one of the syringes in his possession later tested positive for methamphetamine residue when submitted to the Crime Lab. Those admissions, in a general sense, satisfy the elements of criminal possession of dangerous drugs.

¶15 Section 61-8-1002(1)(a), MCA, provides that a person commits the offense of driving under the influence if he "drives or is in actual physical control of a vehicle . . . upon the highways of this state open to the public while under the influence of alcohol, any drug, or a combination of alcohol and any drug." For purposes of § 61-8-1002, MCA, "under the influence" means that, as a result of taking alcohol, drugs, or both into the body, the person's ability to safely operate a vehicle has been diminished. Sections 61-8-1001(14), -101(83), MCA. Snyder admitted he had been driving his vehicle on Highway 89 at the time of the stop; used methamphetamine within the prior 48 hours; had been provided a State Crime Lab drug test showing the presence of methamphetamine in his system the day of the stop; was traveling to Billings for drug treatment because he recognized he needed help with drug use; the state trooper observed "several indicators" that Snyder was possibly under the influence of drugs prompting him to administer a field sobriety test; and, upon administering the test, the trooper "scored clues" indicating Snyder may have been under the influence of drugs. Snyder did not expressly admit that his ability to operate a vehicle safely was diminished. But § 46-12-212(1), MCA, does not require an element-by-element confession. Snyder's admissions, considered together, supplied a

8

sufficient factual basis from which the District Court could infer, for purposes of accepting the plea, that he drove while under the influence of methamphetamine.

¶16    Because Snyder's admissions established factual bases for his guilty pleas, the District Court was not required to sua sponte construe his pleas as *Alford* pleas under § 46-12-212(2), MCA, conduct further inquiry or require further proof, or apply "stricter standards" before accepting Snyder's pleas and adjudicating him guilty of the charged offenses.   A defendant does not trigger *Alford* treatment merely by disputing some evidentiary details while admitting conduct that, in a general sense, satisfies the charged offense.

¶17    Snyder relies on *Frazier*, *Bristow*, and *Schaff*, which are all distinguishable.   His case is not like *Frazier* because, there, the lower court made no inquiry regarding the factual basis for the defendant's uncounseled guilty plea, and instead only told the defendant that his guilty plea constituted an admission to all allegations in the charging documents.  *Frazier*, ¶¶ 5, 11, 18-22 (reversing denial of defendant's timely motion to withdraw guilty plea).   Here, by contrast, Snyder was represented by counsel and made offense-specific admissions concerning his driving, recent methamphetamine use, positive methamphetamine test, possession of syringes intended for methamphetamine use, and possession of methamphetamine residue.   His case is also not like *Schaff*, where the defendant did not expressly admit to having the requisite mental state for the offense, but the court was able to infer it based on the state's evidence and the defendant's colloquy admission that he purposely stabbed the victim eight times.  *Schaff*, ¶¶ 19-25, 34 (affirming

9

denial of defendant's timely motion to withdraw his guilty plea).[2] *Schaff* supports, rather than undermines, the conclusion that a court may infer an element from admissions that generally satisfy the offense. Finally, his case is not like *Bristow* because, unlike the defendant there who expressly entered an *Alford* plea pursuant to his plea agreement, Snyder made no such *Alford* plea, express or otherwise. Therefore, unlike the court in *Bristow*, the court here was not statutorily required by § 46-12-212(2), MCA, "to look to other sources to provide the factual basis for the plea" because Snyder himself offered those admissions. *Compare Bristow*, ¶¶ 6-7, 17-23 (denying plain error review of sufficiency of State's offer of proof on *Alford* plea).

¶18 The plea colloquy was not a model of clarity. The State asked only a jurisdictional question, and the District Court did not independently walk through each element of the charged offenses. But the issue before us is not whether the plea colloquy was ideal; it is whether Snyder has shown plain error requiring reversal of his convictions. Snyder has not met his burden to convince us firmly that the court committed plain error affecting the fundamental fairness of proceedings. Accordingly, we affirm Snyder's convictions for criminal possession of dangerous drugs and driving under the influence.

**Snyder should have been sentenced for his DUI under § 61-8-1007(1)(a)(i), not (ii).**

¶19 Section 61-8-1007(1)(a), MCA, is a DUI penalty statute for first- through third-offense DUIs. *See* § 61-8-1002(1)(a), MCA (defining the subject DUI offense). As pertinent to the offense here, § 61-8-1007(1)(a)(i), MCA, provides that, "for a first

[2] Neither *Frazier* nor *Schaff* involved *Alford* pleas. Nor did either case involve "treating" a guilty plea as an *Alford* plea based on the defendant's maintaining his innocence.

violation," the offender is to be punished "by imprisonment for not less than 24 consecutive hours or more than 6 months and by a fine of not less than $600 or more than $1,000." In contrast, § 61-8-1007(1)(a)(ii), MCA, provides that, "for a second violation," the offender is to be punished "by imprisonment for not less than 7 days or more than 1 year and by a fine of not less than $1,200 or more than $2,000." As applicable here, "[a]n offender is considered to have been previously convicted for the purposes of sentencing if less than 10 years have elapsed between the commission of the present offense and a previous conviction." Section 61-8-1011(1)(b), MCA.[3]

¶20    Here, the State concedes that, despite Snyder's counsel's failure to object to sentencing under § 61-8-1007(1)(a)(ii), MCA, the legality of a criminal sentence is nevertheless subject to review on appeal notwithstanding lack of contemporaneous objection.[4] *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). The State also concedes that more than 10 years had elapsed between Snyder's December 2009 DUI conviction and January 2022 DUI offense. However, the State contends that, because Snyder has already discharged his one-year DUI sentence and his 165 days' time served satisfied in full his $1,200 fine, the illegal sentence is now moot, and we should only

---

[3] Section 61-8-1011(1)(b), MCA, applies "unless the offense is the offender's third or subsequent offense, in which case all previous convictions must be used for sentencing purposes."

[4] The record shows that Snyder's counsel raised the issue at change of plea that Snyder's 2022 DUI might not be "a true second offense," but not because of § 61-8-1011(1)(b), MCA, rather, because Snyder was under 21 at the time of his first 2009 DUI.

remand to "amend Count II to reflect a first offense DUI" to avoid "collateral legal consequences."

¶21 Snyder counters that discharging his DUI sentence did not moot its illegality and, if we abide the State's request and only order that Count II be changed from a second- to a first-offense DUI on remand, the sentence remains illegal. He asks that we remand with instruction to strike his illegal sentence and for entry of judgment imposing the mandatory minimum sentence under § 61-8-1007(1)(a)(i), MCA.[5] We agree with Snyder that he is entitled to a judgment and sentence according to law. *See State v. Kimer*, 2013 MT 14, ¶¶ 18-19, 32, 368 Mont. 261, 295 P.3d 580 (remanding with instruction to strike an illegal sentence from the judgment even though it was previously discharged); *State v. Heafner*, 2010 MT 87, ¶¶ 9-13, 356 Mont. 128, 231 P.3d 1087 ("correcting invalid sentence provisions when it is possible to do so protects the integrity of the judicial process and furthers the express correctional and sentencing policy of the state" (citing § 46-18-101, MCA)). The illegality is not cured by changing only the label of the offense while leaving second-offense penalties in the judgment. A criminal judgment must accurately reflect both the conviction and the lawful statutory sentence imposed.

¶22 First, Snyder was correctly charged with and convicted of a second-offense DUI—after his 2009 DUI, his 2022 offense was his second DUI. However, *for*

---

[5] Snyder makes no argument here that a $600 mandatory minimum fine under § 61-8-1007(1)(a)(i), MCA, would be satisfied by less than the 165 days' time served that satisfied the original $1,200 fine, or that he is owed credit for any time spent in jail on the minimum 7-day jail term actually imposed that should have only been a 24-hour jail term, and we therefore do not decide those matters. On remand, the District Court may apply all credit for time served required by law.

*sentencing purposes*, Snyder's 2009 DUI did not count as a "previous conviction" under § 61-8-1011(1)(b), MCA, because more than 10 years had elapsed between his 2009 conviction and the January 2022 offense.[6] So, although Snyder was convicted of a second-offense DUI, the court was required to sentence Snyder under § 61-8-1007(1)(a)(i), MCA, first-offense sentencing parameters because Snyder was not "considered to have been previously convicted for the purposes of sentencing" under § 61-8-1011(1)(b), MCA.

¶23 Second, because the court was required to sentence Snyder under § 61-8-1007(1)(a)(i), not (ii), his sentence to a one-year jail term and $1,200 fine was illegal. The court was only authorized to sentence Snyder to up to six months in jail and up to a $1,000 fine. Accordingly, we vacate Snyder's August 2023 sentence on the DUI offense and remand for entry of an amended judgment and lawful sentence under § 61-8-1007(1)(a)(i), MCA, with appropriate credit for time served. The amended judgment must also state that Snyder is sentenced under § 61-8-1007(1)(a)(i), MCA, for DUI under first-offense sentencing parameters because more than 10 years elapsed between his first December 2009 DUI conviction and second January 2022 DUI offense,

---

[6] Montana's DUI statutes have defined "previous convictions" and their effect in numerous ways. For example, prior to 1989, § 61-8-714, MCA, provided that, if 5 years had elapsed since a DUI conviction without any subsequent DUI offense, the prior DUI "shall be expunged from the defendant's record." *See, e.g.*, § 61-8-714(5), MCA (1987). After legislative changes in 1989, a prior conviction older than five years was no longer expunged, but instead, records of the prior conviction became "confidential criminal justice information." *State v. Brander*, 280 Mont. 148, 151-52, 930 P.2d 31, 33-34 (1996). Then, in 1997, the "previous convictions" provision was moved from § 61-8-714 to the new § 61-8-734, MCA, where the language providing for a 5-year-old conviction becoming only a matter of confidential record was eliminated entirely and the statute began to look like it does today. *See* § 61-8-734(1)(b), MCA (1997). In 2013, the elapsed-time period became 10 years, which it remains today. *Compare* § 61-8-734(1)(b), MCA (2011) and (2013), *with* § 61-8-1011(1)(b), MCA (2023).

13

and his 2009 DUI was thus not a "previous conviction" for sentencing purposes under § 61-8-1011(1)(b), MCA.

¶24 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON